

**SIGNED this 25th day of November, 2014.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 12-53298-CAG |
| | § | |
| RODELYN PAUTIN, | § | |
| | § | CHAPTER 13 |
| Debtor. | § | |

### MEMORANDUM OPINION

Came on to be considered the above-numbered bankruptcy case, and, in particular, the Chapter 13 Trustee's Motion to Modify Confirmed Plan Pursuant to 11 U.S.C. § 1329(a)(1) ("Trustee's Motion to Modify") (ECF No. 37), and Debtors' Response thereto (ECF No. 38). The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1408(1). This matter is referred to this Court under the District's Standing Order of Reference. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A)(matters concerning the administration of the estate) in which the Court may enter a final order. The Court notes that the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), does not suggest or hold that this Court lacks authority to hear and enter final orders regarding a motion to modify a Chapter 13 plan. The Court finds that this is a contested matter as defined

1

under Federal Rule of Bankruptcy Procedure 9014. As such, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The Court took this matter under advisement and finds that the Chapter 13 Trustee's (the "Trustee") Motion to Modify should be DENIED, in part and GRANTED, in part.

## BACKGROUND

Debtor Rodelyn Pautin filed Chapter 13 bankruptcy on October 26, 2012 (ECF No. 1). On March 12, 2013, the Court signed an Order Confirming the Debtors' Chapter 13 Plan (ECF No. 22). At the time that Debtor's Chapter 13 Plan was confirmed, Debtor indicated income from three sources on her Amended Schedule "I" (ECF No. 12): (1) gross wages of $5,943.00/month working as a Registered Nurse ("RN") for Health South; (2) rental income of $900.00/month; and (3) Debtor's share of her ex-spouse's retirement income of $339.00/month. According to her Amended Schedule "I", Debtor's monthly net income was $775.00/month.

Thereafter, on May 7, 2014, the Chapter 13 Trustee filed her Motion to Dismiss Chapter 13 Case for Failure to Turnover Tax Return and/or Refund with Notice and Opportunity to Object (ECF No. 30). The Trustee sought dismissal of Debtor's case for her failure to provide a copy of her 2013 individual income tax return (Form 1040) to the Trustee as required by 11 U.S.C. § 521(f)(1)[1] and the Court's Amended Standing Order Relating to Chapter 13 Practices in the San Antonio Division (the "Standing Order"). Debtor filed a Response (ECF No. 32) arguing that the Code and Standing Order do not provide a penalty, such as dismissal of the case, for failure to provide a tax return. The Trustee then filed a Notice of Withdrawal of her Motion

---

[1] 11 U.S.C. § 521(f)(1) states:

> At the request of the court, the United States trustee, or any party in interest in a case under chapter 7, 11, or 13, a debtor who is an individual shall file with the court--
>> **(1)** at the same time filed with the taxing authority, a copy of each Federal income tax return required under applicable law (or at the election of the debtor, a transcript of such tax return) with respect to each tax year of the debtor ending while the case is pending under such chapter; ….

to Dismiss presumably on the basis that Debtor did provide her 2012 and 2013 income tax returns to the Trustee.

The Trustee then filed another Motion to Dismiss and Notice of Hearing on July 11, 2014, stating that Debtor was in plan arrears in the total amount of $1,740.52 (ECF No. 35). Per the Court's Standing Order for Chapter 13 cases, Debtor filed her Motion to Modify in Response to Trustee's Motion to Dismiss and First Request for Additional Compensation (ECF No. 41). Debtor states that the grounds for her proposed modification of the plan are:

> Ms. Pautin failed to inform her attorney that she had pawned numerous items of jewelry prepetition. The payments on these items were not factored into her budget. As a result she was working overtime and additional jobs to make the interest payments on these loans. When the additional work was not available she continued to make payments to the pawn shops and fell behind on her plan payments. She has now reduced the debt to the pawn shops and believes she will be able to make the plan payments in the future.

Debtor proposed to increase the plan payment to $810.00/month to cure her plan arrears over the remaining term of the plan. The Debtor also amended her Schedules "I" and "J" in connection with her Motion to Modify Plan (ECF No. 42). This second Amended Schedule "I" indicates the same rental income of $900.00/month but deletes the retirement income previously received from Debtor's ex-spouse. Also, Debtor lists the same employer, Health South, but with an increased monthly income of $6,360.00. Debtor also lists an amortized tax refund for 2013 individual income taxes in the amount of $435.00/month. The amended Schedule "J" indicates a *slight reduction* of net income to $771.00/month.

The Trustee filed the instant Trustee's Motion to Modify seeking to *increase* the plan payment to $1,691.00/month, which would result in a 100% distribution to all creditors (ECF No. 37). The Court held a hearing on the Trustee's Motion to Modify and Debtor's Response (ECF Nos. 37 and 38) on September 25, 2014, and took the matter under advisement. The Court reset the hearing on the Trustee's Motion to Dismiss and the Debtor's Motion to Modify in

3

Response (ECF Nos. 35 and 41) pending consideration of this matter.

## PARTIES' CONTENTIONS

The Trustee raises the following arguments in her Motion to Modify:

(1) The confirmed plan provides a 13% dividend to unsecured claims.

(2) Pursuant to the 2012 Tax Return, Debtor's gross wages in 2012 were $97,497.00. The Trustee calculates that this is an increase of $26,181.00 per year. Per the 2012 Tax Return, Debtor received a profit in rental income of $1,716.00. Debtor also received a 2012 Tax Refund of $3,143.00. Debtor's net income for 2012 was $84,096.00, which amounts to additional net income of $12,876.00 per year or $1,073.00 per month.

(3) Pursuant to the 2013 Tax Return, Debtor's gross wages in 2013 were $107,112.00. The Trustee calculates that this is an increase of $35,796.00 per year. Per the 2013 Tax Return, Debtor shows a loss in rental income of $794.00. Debtor also received a 2013 Tax Refund of $5,213.00. Debtor's net income for 2013 was $88,228.93, which amounts to additional net income of $17,008.93 per year or $1,417.41 per month.

(4) Based on the additional disposable income for 2013, Debtor's monthly Plan payment should increase to $1,691.00, and the dividend to the allowed general unsecured claims should increase to 100%. The Trustee asks that Debtor file amended Schedules "I" and "J" and be compelled to turnover future tax returns and refunds to the Trustee.

In response, Debtor argues that:

(1) She is a contract nurse and earned the additional income in 2012 and 2013 by working extra shifts at two jobs. Debtor states that she is no longer receiving additional shift work. Consequently, Debtor's net income approximates what she was earning at the time of confirmation of her plan.

(2) The Trustee incorrectly calculated her additional income by failing to deduct social

security taxes from her calculations.

(3) Upon confirmation, the disposable income test of 11 U.S.C. § 1325(b)[2] does not apply to modifications of the plan under § 1329 because § 1329(b) does not make § 1325(b) specifically applicable to plan modifications. Further, under *Hamilton v. Lanning*, 560 U.S. 505 (2010), only income that is known or virtually certain to be known at time of confirmation may be included in determining disposable income. Because Debtor did not know at the time of plan confirmation that she would have the opportunity to work extra shifts, the additional income cannot be used in determining disposable income.

(4) Section 521(f)(4)(B) does allow a party in interest to ask for copies of a debtor's tax returns. Debtor maintains that, prior to the Trustee's recent request in her case, she was not required to provide any additional income information. Moreover, even if Debtor had provided the requested information, she was not required to turn over the additional earnings or tax returns because of the limitations indicated in § 1329(b).

## FINDINGS OF FACT

At the hearing on the Trustee's Motion to Modify, the Trustee attached, as Exhibit "C" to the Motion, her calculations of what Debtor's disposable income would have been if the extra shift work and tax refunds had been turned over to the Trustee in a timely fashion. The Trustee's calculations are based solely on the information that Debtor reflected in her bankruptcy filings and the information contained in Debtor's 2012 and 2013 individual income (Form 1040) tax returns. The Trustee concluded that Debtor would not have been required to turn over all her additional disposable income to the Trustee to achieve a 100% distribution to unsecured claimants. The Trustee believes that, if Debtor's plan payments were increased to $1,691.00 per month for the remaining term of the plan, all creditors would be paid in full.

---

[2] Unless otherwise noted, all references are to Title 11, U.S.C. *et. seq.*

The Court questioned Debtor about her income. Debtor acknowledged that she had earned additional income due to extra shift work at her Health South job and that, through her employment at Health South, she was able to find additional RN shifts at hospitals on a temporary basis. Debtor stated that she was no longer receiving the additional shift work nor does she anticipate additional shift work in the foreseeable future. Debtor acknowledged that she was receiving rental income of $900.00 per month, but stated that such income was offset by the mortgage payment on the rental property of $740.00/month plus homeowner's insurance. Debtor also stated that her ex-husband is no longer providing her with any share of his monthly military retirement income – a change which is reflected in Debtor's most recent Schedule "I".

## CONCLUSIONS OF LAW

In addition to the arguments cited in the Parties' Contentions, there were some additional arguments raised at the hearing that this Court will address as an initial matter. First, Debtor's counsel argued at the hearing that, given the res judicata effect of a confirmed plan under § 1327, a plan may not be subsequently amended to increase the plan payment. The Trustee's counsel correctly noted that if the Court adopted Debtor's position, then Chapter 13 plans could also not be amended to decrease the amount of the plan payment. Moreover, § 1329(a) states that a Chapter 13 plan may be amended at any time after confirmation but before completion of plan payments. As such, § 1327 does not preclude the trustee or an unsecured creditor from seeking a modification of the plan. *See In re Meza*, 467 F.3d 874, 876 (5th Cir. 2006) (noting that, although § 1327(a) binds the debtor and the creditors, a confirmed plan may be modified at any time between confirmation of the plan and completion of plan payments) (citation omitted).

Second, Debtor's counsel also asserted that Debtor's additional income from working multiple jobs is exempt. That assertion is incorrect. Section 1306(a)(1) & (2) clearly state that all property and earnings of the debtor acquired post-petition constitute property of the estate.

6

*See* **In re Castillo**, 508 B.R. 1, 6 (Bankr. W.D. Tex. 2014) (finding that the majority of cases hold that § 1306 was intended to increase property of the estate beyond § 541).

Given Debtor's oral testimony and the Trustee's examination of her 2012 and 2013 tax returns, the Court must consider how to adjudicate additional income that was not disclosed at the time the income was earned but is no longer available to the Debtor.

**I.     How Should the Court Apply § 1325(b) to Plan Modifications under § 1329?**

As an initial matter, the Fifth Circuit has found that "Chapter 13 affords 'an individual with regular income' the option of preserving [his] 'pre-petition assets through a three– to five– year plan funded primarily' with that individual's regular income." *In re Cortez*, 457 F.3d 448, 457 (5th Cir. 2006) (citations omitted). "[P]ost-petition earnings of the debtor constitute the principal means of funding the plan." *Id*. (citations omitted).[3]  Further, the Fifth Circuit noted that in a Chapter 13 case, "debtors are obligated to amend their schedules to include subsequent income, even if that income is not known or realized at the time of filing." *Id*.  As such, the debtor is required to cooperate with the Chapter 13 trustee so that the trustee can evaluate whether or not to support confirmation of a plan. *Id*.  Even after a plan is confirmed, the Fifth Circuit reasoned that § 1329 allows the trustee to seek a modification of a plan if there is an increase in the debtor's income, so that more money is paid to creditors. *Id*. (citations omitted). The Fifth Circuit also stated:

> Put another way, permitting a debtor to retain post-petition improvements in earnings, without committing the increase in income that is not reasonably necessary for support of the debtor or the debtor's dependents, would be grounds for rejection or later modification of a Chapter 13 plan. As a practical matter, then, the debtors would be obligated to amend their schedules to disclose any post-petition income under Chapter 13.

*Cortez*, 457 F.3d at 457.

---

[3] *Cortez* was a case of first impression in the Fifth Circuit regarding whether post-petition facts could be used in determining "substantial abuse" under § 707(b).

7

The bankruptcy court in *In re Grutsch*, 453 B.R. 420, 422 (Bankr. D. Kan. 2011), recognized that one of the more significant changes made to the Bankruptcy Code under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) was that Congress included the "Applicable Commitment Period" as a basis for confirming Chapter 13 plans to replace the minimum three year duration requirement of the plan under the "best interests test" in § 1325(b)(1)(B). Prior to BAPCPA, debtors satisfied the "best interests test" if the debtor dedicated all of his or her income to plan for a period of three years. *Grutsch*, 453 B.R. at 422-23. Under BAPCPA, if the trustee or holder of an allowed claim objects to confirmation of a Chapter 13 plan, the plan must: "(1) [pay] all allowed unsecured claims in full or (2) [commit] to the payment of all of the debtor's "projected disposable income," as defined in § 1325(b)(2), to be received during the "applicable commitment period." The applicable commitment period is defined in § 1325(b)(4). [4] *Id*. at 423. A debtor's classification as a below-median income debtor or an above-median income debtor determines the duration of the plan from three years to five years. As such, in the context of plan modifications, the question then becomes – can the Trustee argue that the court must consider an increase in disposable income as

---

[4] Section 1325(b)(4) states:

For purposes of this subsection, the "applicable commitment period"--
    **(A)** subject to subparagraph (B), shall be--
        **(i)** 3 years; or
        **(ii)** not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--
            **(I)** in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
            **(II)** in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
            **(III)** in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $675 per month for each individual in excess of 4; and
    **(B)** may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

a basis for increasing the plan payment if the debtor has already dedicated the requisite amount of income as defined in the "applicable commitment period"?

Debtor correctly notes that § 1325(b)(1) is not included in § 1329. Further, Debtor argues that "projected disposable income" is not a defined term under the Bankruptcy Code, but that both the Supreme Court and the Fifth Circuit have determined that "projected disposable income" is income that is virtually certain or reasonably foreseeable. *Hamilton v. Lanning*, 560 U.S. 505 (2010); *Nowlin v. Peake (In re Nowlin)*, 576 F.3d 258 (2009). Moreover, under both pre-BAPCPA or post-BAPCPA law, § 1329(b)(1) did not incorporate all of § 1325, but only § 1325(a).

Several courts have found that the omission of § 1325(b)(1) from modifications under § 1329 indicates that Congress did not include a disposable income test for purposes of determining if a plan modification should be allowed. *See, e.g. In re Gonzalez*, 388 B.R. 292, 306-07 (Bankr. S.D. Tex. 2008) (holding that, because § 1325(b) is not included in § 1329, the court should consider if the modification was proposed in good faith and not consider projected disposable income); *In re Hill*, 386 B.R. 670, 676 (Bankr. S.D. Ohio 2008) (finding the plain meaning of § 1329(b)(1) demonstrates a specific reference only to § 1325(a) and not § 1325(b)); *In re McCollum*, 363 B.R. 789, 798 (E.D. La. 2007) (holding that it is unlikely that Congress chose to list specific subsections of the Code that would apply to § 1329, but omit § 1325(b) and incorporate it by reference); *In re Sunhara*, 326 B.R. 768 (9th Cir. B.A.P. 2005) (The panel found that Congress knows how to write a statute and the express omission of § 1329(b) cannot mean that Congress meant to include § 1325(b) by reference. Moreover, the panel stated that, if disposable income is a test to be employed each time a plan is modified, then the term "projected disposable income" has no meaning.); *In re Hall*, No. 06-61733, 2008 WL 2388628, *2 (Bankr. N.D. Ohio June 11, 2008) (finding that the indirect reference to § 1325(b) through § 1325(a) is a

bridge too far for this court to accept and noting that Congress did incorporate other provisions in § 1329 by specific references to § 1322(a and b) without incorporating by reference the inclusion of § 1325(b)).[5]

Debtor also maintains that § 1325(b)(1) is only a conditional requirement of confirmation that may be waived if no party raises it. *See In re Meadows*, 410 B.R. 242, 247 (Bankr. N.D. Tex. 2009) (holding that § 1325(b)(1) only applies if an objection to confirmation is filed). Further, Debtor argues that § 1325(b)(1) can only apply to a modification if a trustee or an unsecured creditor raises it, but not the debtor. *See In re Braune*, 385 B.R. 167, 171 (Bankr. N.D. Tex. 2008) (holding that, in the context of a plan modification, the disposable income test only applies if the trustee or an unsecured creditor raises it, not a debtor). Thus, in the case at bar, because the Trustee seeks to modify the plan and Debtor objects to the modification, Debtor argues that the Court should not consider the disposable income test because the test may only be raised in an objection by the Chapter 13 trustee or an unsecured creditor.

The Trustee argues that § 1329(a)(1) clearly provides that a plan may be modified to increase or reduce the amount of payments to a class of claims. Further, the Trustee acknowledges that the criteria for approving a modification is contained in § 1329(b)(1), which incorporates §§ 1322 (a) & (b), 1323(c), and 1325(a). The Trustee alleges that there does not need to be a threshold showing of a substantial and unanticipated change to support the filing of a plan modification. The Trustee also agrees that § 1329 does not specifically incorporate § 1325(b)(1) and that there is no controlling precedent in the Fifth Circuit as to whether the disposable income test applies to plan modifications.

Of the courts that find that the disposable income test of § 1325(b)(1) is not included in

---

[5] *See also Conn. Nat't Bank v. Germain*, 503 U.S. 249, 254 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *United States v. Ron Pair. Enters., Inc.*, 489 U.S. 235, 241 (1989) (holding that where statutory language is plain, "the sole function of the courts is to enforce it according to its terms") (citations omitted).

§ 1329, some reason that, under a strict reading of § 1329, application of disposable income is still a factor in determining the good faith of a plan modification despite not being specifically mentioned. *Sunahara*, 326 B.R. at 782. Further, "under this approach, important components of the disposable income test are employed as part of a more general analysis of the total circumstances militating in favor or against the approval of the modification … ." *Id*. at 781. The Ninth Circuit B.A.P. found that:

> In our view, the approach adopted by the court in *Sounakhene* is the most sound in that it permits a married analysis that is consistent with both the plain language and the spirit of §§ 1329 and 1325. Under this approach, important components of the disposable income test are employed as part of a more general analysis of the total circumstances militating in favor of or against the approval of modification, without requiring tortured and illogical statutory interpretations (where the outcome differs depending upon which party is seeking the modification, whether a certain party has objected, or whether "extraordinary circumstances" exist, etc.). *In re Sounakhene*, 249 B.R. at 805 (*citing Than*, 215 B.R. at 436); *Powers*, 202 B.R. at 623 (recognizing the debtor's changed income and expenses are factored into the bankruptcy court's good judgment and discretion).

*Sunahara*, 326 B.R. at 781.

> These components can include:

> Such a determination necessarily requires an assessment of a debtor's overall financial condition including, without limitation, the debtor's current disposable income, the likelihood that the debtor's disposable income will significantly increase due to increased income or decreased expenses over the remaining term of the original plan, the proximity of time between confirmation of the original plan and the filing of the modification motion, and the risk of default over the remaining term of the plan versus the certainty of immediate payment to creditors.

*Id.* at 781-82.

The Trustee argues, in the alternative, that if the Court finds that Congress intended that the disposable income test not be included in plan modifications under § 1329, then the Court should consider the Debtor's economic situation in connection with § 1325(a). Notwithstanding the Ninth Circuit's B.A.P. opinion in *Sunahara*, one bankruptcy court in that jurisdiction

disagreed with *Sunahara's* conclusion that § 1325(b) should not apply to plan modifications:

> The omission of section 1325(b) from section 1329(b) should not be taken to mean that section 1325(b) is not applicable to modified plans. Section 1329(b) requires that a modified plan comply with section 1325(a). Section 1325(a), in turn, provides that "[e]xcept as provided in subsection (b), the court shall confirm a plan if" the six requirements of sections 1325(a)(1)—(a)(6) are satisfied. From the perspective of an objecting unsecured creditor, section 1325(a) provides that a plan must be confirmed if unsecured creditors will receive the present value of the dividend payable in a chapter 7 case unless the debtor's projected disposable income over three years would pay a higher dividend. If a debtor's future disposable income will pay more than the liquidation dividend, confirmation must be withheld unless the plan provides for the higher dividend.

> Rather than read section 1325(b) as always qualifying section 1325(a), the panel in *Sunahara* in effect interpreted the first phrase in section 1325(a) as if it read, "if subsection (b) applies." The cross-reference in section 1325(a) to section 1325(b) suggests that subsection (b) comes into play whenever subsection (a) is applicable.

> Nonetheless, assuming that section 1325(b) does not apply to a modified plan proposed after confirmation of the initial plan, the assistance offered by *Sunahara* to a debtor seeking to end a plan in less than 3 years without paying unsecured claims in full may be illusory.

*In re Keller*, 329 B.R. 697, 701-02 (Bankr. E.D. Cal. 2007).[6]

The debate regarding whether § 1325(b)(1) is subsumed into § 1329 may not be resolved absent Circuit or Supreme Court authority. Moreover, there are equally compelling bases from the Supreme Court's last term that a court can rely on in determining whether a textual analysis should be employed[7], or examining legislative intent to determine the purpose of the statute.[8] Consequently, the Court finds that although § 1325(b) is not included in § 1329 on a textual

---

[6] There are two notable aspects about the discussions in *Sunahara* and *Keller*. First, it is debatable whether the Court in *Keller* can deviate from Bankruptcy Appellate Panel precedent. *See In re Tong Seng Vue*, 364 B.R. 767, 771 (Bankr. D. Or. 2007) (holding a court is not free to ignore B.A.P. precedent). Second, *Sunahara* and *Keller* involve cases in which the Debtors had lump sum payments available to pay off their plans early; here, the Debtor had income earned during the case that was neither disclosed nor remitted to the Trustee.

[7] *See Law v. Siegel*, 134 S. Ct. 1188 (2014) (finding that there is no statutory basis to allow a court to surcharge a debtor's exempt property notwithstanding the debtor's fraudulent, if not criminal conduct).

[8] *See Clark v. Raemaker*, 134 S. Ct. 2242 (2014) (finding that notwithstanding § 522's indication that retirement IRAs are exempt, statute should not be expanded to include inherited IRAs and to hold otherwise would circumvent Congress's intention that only the debtor's retirement savings should be exempt from creditor claims).

basis, such a conclusion does not preclude this Court from considering disposable income in the context of good faith under § 1329 on a legislative intent analysis.

The Court finds persuasive the bankruptcy court's analysis in *In re Grutsch*, 453 B.R. 420 (Bankr. D. Kan. 2011). The *Grutsch* court found that the majority of cases holding that § 1325(b)(1) is not included in § 1329 more persuasive. Further, the *Grutsch* court offered at least three reasons why § 1325(b)(1) cannot be found to be included in § 1329:

(1) § 1325(a) does not incorporate § 1325(b)(1) because § 1325(a) deals with requirements for confirmation of a plan whereas § 1325(b)(1) is only implicated if someone objects to confirmation of a plan;

(2) Congress specifically included §§ 1322(a), 1322(b), and 1322(c) into § 1329. Had Congress intended to include § 1325(b)(1) into § 1329, it could have done so; and

(3) Congress amended § 1329(c), and not § 1329(b), to include "applicable commitment period" and, in doing so, indicated that Congress did not intend to include the disposable income requirement of § 1329(b)(1) as well into § 1329. *Id*. at 425-26.

As the *Grutsch* court correctly found, however, the fact that § 1325(b)(1) is not included in § 1329 does not end the inquiry. *Id*. at 427. The *Grutsch* court concluded that a plan modification must be proposed in good faith. *Id*. at 427. The court stated, "The good faith requirement of § 1325(a)(3) fills the gap that would otherwise exist, allowing all parties to object to inappropriate payment terms—whether excessive or inadequate—in a proposed modification." *Id*. (citations omitted). Moreover, the court held that the heart of the BAPCPA's reforms is to ensure that debtors repay creditors the maximum they can afford. *Id*. (citing H.R. Rep. No. 109-31(I), p.2, 2005 U.S.C.C.A.N. 88, 89). As such, the court determined that, during the pendency of a Chapter 13 case, the Chapter 13 trustee or any party in interest can request and obtain copies of the debtor's post-petition tax returns and annual income and expense reports. *Id*. at 427-28.

13

As a result, "[i]f a debtor's income increases or expenses decrease, thereby making more money available for Chapter 13 plan payments, a Chapter 13 Trustee or a creditor may request plan modification under § 1329." *Id.* "Together, those sections best ensure that debtors repay the maximum they can afford over the course of their Chapter 13 bankruptcy case." *Id.* (citations omitted).

The Seventh Circuit has found that a debtor, trustee, or unsecured claim holder has the absolute right to request a modification of a Chapter 13 plan in between confirmation of a plan and completion of plan payments. *In re Witkowski*, 16 F.3d 739, 742 (7th Cir. 1994). Although a pre-BAPCPA case, the *Witkowski* court recognized, "If the drafters of the Bankruptcy Code intended for a confirmation hearing to have res judicata effect, there would be little or no reason for Section 1329." *Id.* at 745 (quoting *In re Williams*, 108 B.R. 119, 123 (Bankr. N.D. Miss. 1989)). Several circuit courts have recognized that § 1329 allows the trustee or unsecured claim holder to seek modification of a plan for increases in the debtor's income. *See Germeraad v. Powell*, No. 14-CV-3129, slip op. at 10 (Bankr. C.D. Ill. Oct. 27, 2014) (citing *Pliler v. Stearns*, 747 F.3d 260, 266 (4th Cir. 2014) (holding that § 1329 may be used to increase plan payments if the debtor comes into additional, unforeseen income); *Carroll v. Logan*, 735 F.3d 147, 151 (4th Cir. 2013) (finding repayment plans remain subject to debtor's increased ability to pay because if the debtor's fortunes improve, the creditors should share some of the wealth); *In re Flores*, 735 F.3d 855, 861-62 (9th Cir. 2013) (when analyzing the Supreme Court's analysis in *Lanning*, the statute is meant to allow creditors to receive increased payments from debtors who happen to have earnings that increase)).

Debtor has premised much of her opposition to the Trustee's Motion on the assertion that § 1325(b)(1) does not apply to § 1329, and as a result, a debtor cannot be compelled to commit additional income earned during a Chapter 13 case. While the Debtor's textual analysis of the

interplay between § 1325(b)(1) and § 1329 is correct, it does not preclude the Court from considering other factors under the general rubric of good faith. In this case, the Debtor not only had significant additional income that went unreported to the Chapter 13 trustee and creditors, but she also had tax refunds that were not disclosed or remitted to the Trustee. If the Court were to adopt the Debtor's position and circumstances such as in this case were to occur, it would render § 1329(a)(1) meaningless and give no effect to the necessity of filing tax returns and income and expense reports. *Germeraad v. Powell*, No. 14-CV-3129, at 16, fn. 4. (citations omitted). The Court finds that Debtor's failure to report her additional earnings and tax refunds[9], absent a specific demand by the Trustee, is not good faith.[10]

## II. Does Debtor have a duty to report additional income through the filing of tax returns and income and expense reports?

As noted herein, BAPCPA increased a consumer debtor's reporting requirements through the addition of § 521(f). Section 521(f) requires a Chapter 13 debtor to file tax returns on request of any party in interest. This requirement assists a trustee's determination if a modification is warranted based upon additional income. *See In re Slusher*, 359 B.R. 290, 304-05 (Bankr. D. Nev. 2007) (stating that § 1329 is bolstered by the reporting requirements of § 521(f)). As one court noted "[t]he purpose of this section, ostensibly, is to allow interested parties to monitor a debtor's financial situation during the pendency of the bankruptcy case and to seek modification of the plan pursuant to § 1329 if changes in that situation occur." *In re Nance*, 371 B.R. 358,

---

[9] Debtor argues that post-petition tax refunds are not property of the estate. A number of courts in the Fifth Circuit have held otherwise. *See, e.g. In re Reeves*, 509 B.R. 35, 77 (Bankr. S.D. Tex. 2014) (explaining that debtors have a duty to turnover tax refunds to the trustee); *In re Hymond*, 2012 WL 6692196, *3 (Bankr. N.D. Tex. 2012) ("[E]state property that exists at the time of confirmation vests in the debtor per section 1327(b), but property acquired by the debtor after confirmation becomes estate property under 1306(a)(1).") (citation omitted); *In re Lafanette*, 208 B.R. 394, 395 (Bankr. W.D. La. 1996) (holding tax refunds are property of the Chapter 13 estate).

[10] Debtor also argued that to allow the Trustee successive opportunities to amend a debtor's plan would render the plan an "open plan", presumably one that could be amended several times. The Court finds this concern unavailing. Debtors routinely modify plans on multiple occasions for decreases in income. If a debtor obtains additional income while under the protection of the automatic stay, then increases in plan payments may be considered under § 1329.

371 (S.D. Ill. 2007).

Debtor suggests that because § 521(f) is not mandatory, but based upon a trustee or party in interest taking affirmative steps to request a copy of a debtor's tax returns or income and expenses report, that a debtor's failure not to account for additional income cannot be used as a basis for modifying a plan. Such an assertion renders both §§ 521 and 1329 meaningless. A debtor has the duty under BAPCPA to devote all of his or her income to repaying creditors. *Ransom v. FIA Card Serv., N.A.*, 131 S. Ct. 716, 729 (2011) ("Congress designed the means test to measure debtors' disposable income and, in that way, 'to ensure that [they] repay creditors the maximum they can afford.' H.R. Rep., at 2. This purpose is best achieved by interpreting the means test, consistent with the statutory text, to reflect a debtor's ability to afford repayment."). The fact that a party has not sought copies of tax returns or income and expense reports does not allow a debtor to use undisclosed income for her own means.

### III.    May Debtor be compelled to amend her plan if such modification would be infeasible?

Debtor argues that even if the Court finds that § 1329 permits the Trustee to seek a modification of Debtor's plan, such a modification would be infeasible given the amended terms the Trustee seeks – $1,691.00/month for the remaining 42 months of the plan. Debtor maintains that the Court may not approve a modification of a plan if it is not feasible. *See In re Zavala*, 366 B.R. 643, 654-55 (Bankr. W.D. Tex. 2007) (stating that pursuant to § 1329(b), which incorporates all of § 1325(a) including feasibility under § 1325(a)(6), a plan modification cannot be approved unless the modified plan will be feasible). Debtor states that, given her current stated monthly income, she cannot increase her plan payment to the amount the Trustee suggests.

The Fifth Circuit held in *Meza*, that a modification of plan may be filed prior to the debtor's completion of plan payments. 467 F.3d at 878-80. Further, § 1329(c) allows the court

to extend the applicable commitment period for a longer period of time if cause is shown. The Trustee posits that the "cause" shown is the Debtor not remitting her 2013 tax refund and increased earnings to the Trustee. The Court agrees, but there must be a showing that the Debtor has sufficient income to pay the increased amount.

The Trustee provided a mathematical analysis examining the Debtor's most current Schedule "I" at the time of the filing of the Trustee's Motion to Modify; the income and deductions reported on the Debtor's 2013 income tax return; and estimated deductions for social security and Medicare based on gross wages for tax year 2013 under applicable law. *See* Trustee's Brief (ECF No. 43) at pp. 9-11. The Trustee's analysis is also based upon Debtor's submission of her pay advices for three different employers. The Trustee calculates that, of the three sources of income, Debtor has earned in 2014 (YTD) $106,612.57 in gross income and $74,645.14 in net income. The Trustee stated that, although Debtor is not working at the same three jobs she previously held, the income Debtor has earned thus far for 2014 is substantially greater than reported by the Debtor in January 2013. That said, the Trustee did acknowledge that Debtor is now only reporting income from one source – Debtor's employment at Health South.

Debtor's testimony is that she maintains her current employment at Health South with little, if no, prospect of additional shift work as a nurse. Further, Debtor testified that she no longer receives a portion of her ex-husband's retirement income. Debtor continues to receive rental income of $900/month but must also pay the mortgage on the rent house as well as homeowner's insurance. As such, there is insufficient income to make the Trustee's proposed plan payment of $1,691.00 per month.

The Court is deeply troubled by the developments in this case. Debtor did not disclose the payments to the pawn shop. Her failure to do so resulted in her falling behind on her Chapter 13 plan payments. Debtor earned additional income that was not disclosed to the Court, Chapter

17

13 Trustee, or the creditors.  Moreover, notwithstanding the additional accumulated income, Debtor offered only that she worked the extra shifts to pay off her pawn debts for jewelry, and not for creditors.  Debtor did not disclose her tax refunds to the Trustee even though the tax refunds are property of the estate.  All told, there has been an absence of accountability and transparency in this case.[11]

Nonetheless, even under the facts of this case, the Trustee's proposed modification is infeasible.  As such, the Court cannot wind the clock back to recover income that has been spent or dissipated. *See In re Rodriguez*, 369 B.R. 333, 337 (Bankr. S.D. Tex. 2007) ("The Court cannot confirm a plan, or approve a plan modification, unless the Court concludes that Debtor will be able to make the payments called for in the plan. The Court cannot make that finding."). Moreover, as noted by at least one court, the Bankruptcy Code does not require debtors to retroactively amend their plans to recapture an increase in income where it would render the plan infeasible going forward.  *See In re Self*, 2009 WL 2969489 (Bankr. D. Kan. 2009).  The *Self* court dealt with a similar situation as in this case in which the trustee found out about debtors' additional and undisclosed income after the fact and attempted to retroactively modify plan to include the past income.  *Self*, 2009 WL at *9.  This Court agrees with the sentiments expressed in *Self* that:

> The Court has found that the Chapter 13 Trustee has the authority to seek amendment to Debtors' Chapter 13 plan based upon their significant increase in disposable income.  However, the Court finds that it cannot grant the Trustee's request that this amendment be applied retroactively to January 2008.  The Trustee's request is based upon the fact that Debtors' income had increased significantly by January 2008, [footnote deleted] and that Debtors should have come forward with their own amendment, and should have been making larger plan payments from that point forward instead of dramatically increasing their standard of living to absorb the entire increase.

---

[11] The Court notes that the Trustee's Motion to Dismiss (ECF No. 35) based upon plan payment delinquency is currently pending before the Court.  The Court invites the Trustee to amend her relief to seek dismissal of the case "for cause" under § 1307(c).

> Although the Court is sympathetic with the Trustee's position, the Court finds any change in plan payments should not here be retroactive. …
>
> ****
>
> In addition, and perhaps most importantly, the Court notes that nothing in the Bankruptcy Code *requires* debtors to amend their plans in the event they experience an increase in disposable income. Were the Court to grant the Trustee's motion for retroactive relief, it would require Debtors to essentially repay nearly two years of increased plan payments. Although not framed this way in the Trustee's request, granting the requested relief would result in essentially granting a judgment to the Trustee for Debtors' failure to voluntarily amend their plan when they were not statutorily required to do so. Finally, the evidence received at trial shows that these Debtors chose to spend all extra money-rather than saving for the inevitable rainy day of unemployment (which they then did experience) or car problems (which they also experienced and used as a basis for retaining a huge refund), or health issues (which they also experienced and used as a basis to retain the refund), so a decision requiring them to repay the money at this point would result in the immediate lack of feasibility of the plan, and its attendant dismissal.

*Self*, 2009 WL at *9-11.[12]

As such, the Court finds that the Trustee's Motion to Modify to "recapture" past income is unavailing under the facts of this case. That said, to give some enforcement power to the Trustee regarding the Debtor's income and tax refunds, the Court finds that the Debtor must turnover all future refunds to the Trustee during the pendency of Debtor's case. *See **Washington v. Countryman***, 390 B.R. 843, 847 (E.D. Tex. 2007) (issuance of a tax refund is grounds for a modification). Further, the Debtor is ordered to provide tax returns on annual basis to the Trustee and to provide all pay advices, from any source of employment, to the Trustee on a quarterly basis.

---

[12] The *Self* court also noted that the good faith requirement of § 1325(a)(3) is not pertinent to the Trustee proposing a plan modification because Debtor's good faith was determined at the time the Court confirmed Debtor's plan. *Self*, 2009 WL at *9.

Additionally, this Court would note that, notwithstanding the fact that the Code does not *require* debtors to file a plan modification with an increase in post-petition income, § 1306(a) clearly states that all property and earnings of the debtor acquired post-petition constitute property of the estate. Dissipation of undisclosed estate property that should otherwise be used to pay creditors may remain adequate cause for dismissal of a non-disclosing debtor's case.

## CONCLUSION

For these reasons, the Court finds that the Chapter 13 Trustee's Motion to Modify Confirmed Plan Pursuant to 11 U.S.C. § 1329(a)(1) (ECF No. 37) should be GRANTED, in part and DENIED, in part. The Court finds that the Trustee's request that the plan be modified to recapture past additional income should be DENIED as it would render the plan infeasible. The Court finds that the Trustee's requests for turnover of all future tax refunds and provision of tax returns and pay advices, from any source of employment, should be GRANTED.

All other relief not specifically granted herein should be DENIED.

# # #